UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Danville Division)

| | |
|---|---|
| AVERETT UNIVERSITY, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:25-CV-00019 |
| ) | |
| v. ) | |
| ) | |
| DONALD BRUCE AUNGST, *et al.* ) | |
| ) | |
| Defendant. ) | |

**OPPOSITION TO DEFENDANT AUNGST'S MOTION TO DISMISS**

Plaintiff Averett University ("Averett" or "the University"), by counsel, sets forth the following in opposition to Defendant Donald Bruce Aungst's motion to dismiss. (ECF No. 20.)

## Introduction

Aungst moves to dismiss the Complaint filed by Averett on grounds that arbitration is the proper venue for this action. Aungst also moves to dismiss each of the four counts asserted against him under Fed. R. Civ. P. 12(b)(6). As to the first point, the claims against Aungst are not subject to arbitration because Averett's contract with Global Strategic Investment Solutions ("GSIS") did not evince an intent to arbitrate any claims Averett might have against Aungst, its own employee. As to the second point, Aungst's Rule 12(b)(6) motions improperly ask the Court to rule on the merits of Averett's claims. The allegations and exhibits to the Complaint set forth in abundant detail the factual predicates to Averett's claims against Aungst for breach of fiduciary duty, conspiracy and fraud.

1

# ARGUMENT

I. **Aungst Cannot Enforce The Arbitration Provision Contained Within Averett and GSIS's Contract.**

    **A. Aungst is Not a Party to the Contract.**

Aungst is not a party to Averett's contract with GSIS, and thus cannot avail himself of its arbitration provision. The parties' arbitration provision applies to disputes between GSIS and Averett arising out of performance of the contract. *See, e.g.*, Opp'n at ECF 18. While GSIS's employees "may in some instances invoke the company's arbitration clause," Aungst certainly cannot. *See Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 23 (E.D. Va. 2017). Here, Aungst was an employee of *Averett*, not GSIS. The contract pertains to services GSIS was providing Averett, not to services Aungst was providing Averett. Just as Aungst could not avail himself of the arbitration provision in an employment dispute with Averett, nor can he avail himself of it now.

None of the cases cited by Aungst support a contrary position. In *Meridian Imaging Solutions*, which Aungst claims "is a similar set of facts" (Mot. at 15), the non-signatory was an employee of an entity engaged in arbitration with plaintiff "for claims arising out of the same nucleus of operative facts as is alleged in the Complaint" to arbitrate claims against him. *Id.* at 17-20, 23. The district court in *Meridian* rejected the non-signatory's attempt to compel two other non-signatories to arbitrate their claims on the basis of agency and estoppel. *Id.* at 26. Thus, *Meridian* does nothing for Aungst's argument that somehow he, as an employee of Averett, can avail himself of the arbitration provision with respect to claims arising out of his independent duties to Averett. Nor does *Hutchinson*, an unreported decision in the Western District of North Carolina, support Aungst's position. There, the district court merely held that non-signatory car repossession companies were acting as agents *of the defendant*. *Hutchinson v. Absolute Recovery Towing Am.*

*Credit Acceptance, LLC*, No. 320CV00621, 2021 WL 3285037, at *5 (W.D.N.C. July 27, 2021), *report and recommendation adopted sub nom. Hutchinson v. Absolute Recovery Towing*, No. 3:20-CV-621, 2021 WL 3625317 (W.D.N.C. Aug. 16, 2021). Aungst breached his fiduciary duties as an agent and employee of Averett, and there was no agency relationship between Aungst and *GSIS* that would allow Aungst to avail himself of the arbitration agreement.

Equitable estoppel also does not apply here, because Averett's claims against Aungst are not based on the "breach of the obligations and duties assigned to [him] in the agreement . . . ." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) (citations omitted). Aungst alleges that Averett "rel[ies] on the IAC as the source of Aungst's duties" (Mot. at 17), but nowhere in the Complaint does Averett do so. Instead, the Complaint states that the IPS recognized the Board's pre-existing fiduciary duties to its donors, and "provided for the Board to delegate that fiduciary duty to the Investment Committee, who in turn 'has delegated responsibility for some routine portfolio management activities' to Aungst. Aungst therefore was entrusted with the same fiduciary obligations to the University as the Board." (Compl. ¶¶46-47.) Those fiduciary duties of loyalty and care—of Aungst to the Investment Committee, the Investment Committee to the Board, and the Board to the University itself—existed independently of GSIS's relationship to Averett. (Compl. ¶109, alleging fiduciary duties without reference to IPS.) As CFO, Aungst's fiduciary duties of loyalty and care exist apart from the IPS. These duties and obligations are inherent in Aungst's employment. As the Virginia Supreme Court has noted, "employees and directors of a corporation are required to 'exercise the utmost good faith and loyalty' toward the corporation and may not act 'in a manner adverse to the corporation's interest." *Feddeman & Co., C.P.A., P.C. v. Langan Assocs., P.C.*, 260 Va. 35, 43, 530 S.E.2d 668, 673 (2000). Indeed, Aungst's invocation of the business judgment rule in his motion to dismiss is an implicit acknowledgment that he owed

3

fiduciary duties to Averett as an officer of the University. *See* Mot. at 18-19. Aungst's allegation that "Averett's claims against Aungst rely on the duties and obligations created under the IPS" is a misreading of the Complaint and the IPS.

> **B. Even if Aungst was a Party to the Agreement, the Arbitration Provision Does Not Extend to the Claims Against Aungst.**

The Court should find Aungst is not a party to GSIS's contract with Averett, and its analysis should stop there. However, even if Aungst could somehow invoke the arbitration agreement, this case is not arbitrable. As set out more fully in Averett's Opposition to the GSIS Defendants' Motion to Compel Arbitration (ECF No. 18), the arbitration provision in the Investment Advisory Contract does not clearly establish the intent to arbitrate the types of claims at issue in this case.

"Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*. To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citations omitted).

The arbitration provision on which GSIS relies reads as follows:

> The parties agree that any dispute arising under this Agreement or involving a Platform Provider or any Investment Manager shall be determined by an arbitration proceeding, which shall be held in accordance with the rules, regulations and procedures then in effect of the American Arbitration Association. The award of the arbitrators shall be final and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction and each party hereby submits to the jurisdiction of any such court for the

> purpose of such arbitration and the entering of such judgment. Client understands that this Agreement to Arbitrate does not constitute a waiver of the right to seek a judicial forum where such waiver would be void under the federal securities laws and each party must pay its own expenses and attorney's fees.

ECF 1-5, p. 4 of 18. For various reasons, this poorly drafted provision does not require the parties to arbitrate the claims asserted by Averett.

As a preliminary matter, given the lack of language explicitly delegating the jurisdictional inquiry to an arbitrator, and the nature of the dispute between Averett and the parties, the Court must determine the arbitrability of Averett's Complaint. Ordinarily, it is "the court, not the arbitrator, [that] must decide whether the dispute is arbitrable." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 99 (4th Cir. 2012). "Parties, to be sure, can agree to arbitrate arbitrability, but such agreement "must . . . 'clearly and unmistakably' provide that the arbitrator shall determine what disputes the parties agreed to arbitrate." *Id*. (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999). While the parties' contract does invoke the AAA rules, Aungst's reliance on *Brenco Enterprises, Inc.* is unwarranted. There, the district court already made a preliminary determination that the case was arbitrable, because at issue was the "interpretation of the contract" between the parties. *Brenco Enters., Inc. v. Bitesquad.com, LLC*, 297 F. Supp. 3d 608, 613 (E.D. Va. 2018). Here, Averett is not alleging a breach of contract claim against Aungst, and Aungst's duties and obligations to Averett exist independently of GSIS's contractual agreement with Averett. *See Supra*, I. A. Aungst cannot invoke an arbitration provision in a contract to which he is not a party.

Even if the Court found that certain claims against Aungst would not have arisen *but for* the contractual agreement between GSIS and Averett, that does not mean those claims are arbitrable when the parties only agreed to arbitrate claims "arising under" the contract. In *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir. 1996), the Fourth

Circuit drew a distinction between an arbitration clause with narrower language requiring arbitration of disputes "arising hereunder" versus a broader provision applicable to disputes that "ar[ose] out of or related to" an agreement between the parties. 96 F.3d at 92-93. The Court noted with approval the Ninth Circuit's determination that the clause "arising hereunder" "limited the arbitration of disputes to those that 'relat[ed] to the interpretation and performance of the contract itself[,]'" because that phrase is "much narrower than 'the arising out of or relating to' standard recommended by the American Arbitration Association." *Id*. at 92-93 (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)). This logic has been applied by other Courts within this Circuit. *See, e.g., Brown v. ABF Freight Sys., Inc.*, 183 F.3d 319, 321–22 (4th Cir. 1999) ("Because the arbitration clause refers only to grievances arising under the Agreement, it cannot be read to require arbitration of those grievances arising out of alleged statutory violations."); *Rudolph v. Alamo Rent A Car, Inc*., 952 F. Supp. 311, 318–19 (E.D. Va. 1997) ("[A]n employment contract may well provide arbitration only for contractual claims and not statutory claims, even when both claims may result from the same factual occurrence.")

While the model arbitration clause provided for by the AAA rules requires arbitration of all disputes "arising out of or relating to," that language is notably omitted from the parties' contract here. (*See* ECF No. 13-2 at 145.) Like the provision in *Mediterranean Enterprises,* the "arising under" language in GSIS' form Investment Advisory Contract only contemplates arbitration of disputes that relate to the performance of the parties' contract. It does not compel arbitration of *all* disputes related to the parties' relationship. Because the present arbitration provision only applies to claims "arising under" the Investment Advisory Contract, it does not require arbitration of Averett's non-contractual claims.

6

### C. All Of The Claims In the Complaint Should Be Tried in a Single Forum.

As set forth in Averett's Opposition to GSIS Defendants' Motion to Compel Arbitration (ECF No. 18), the Court should deny the various Defendants' attempts to route this dispute to arbitration. Rather than restate its previous arguments, Averett incorporates its Opposition to GSIS Defendants' Motion to Compel Arbitration as if set forth here in full. In particular, given the financial distress caused by Defendants' conduct, Averett should not be forced to bear the costs of arbitration. The financial hardship of arbitration would be exacerbated if Averett were forced to fight a battle on two fronts; (i) litigating with Aungst in court while (ii) arbitrating its claims against GSIS. For that reason, among others, all of the claims in the Complaint should be adjudicated in this forum.

However, because the costs of pursuing its claims in two different venues are sufficiently burdensome, Averett would prefer that all of the claims against the various Defendants be adjudicated in a single proceeding. Thus, if the Court were to grant GSIS' Motion to Compel Arbitration, then the claims against Aungst also should be subject to arbitration despite Aungst's inability to enforce the arbitration provision in the Investment Advisory Contract between Averett and GSIS.

## II.    Motion to Dismiss for Failure to State a Claim

### A. Legal Standard

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (quoting *Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir. 1969) (citation omitted)). "The court may not dismiss a complaint unless the plaintiff can prove no set of facts that would

7

entitle the plaintiff to relief." *Yukon Pocahontas Coal Co. v. Island Creek Coal Co.*, 428 F. Supp. 2d 490, 494 (W.D. Va. 2006).

A "plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 653 (W.D. Va. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "accept[s] as true all of the factual allegations contained in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The court "may consider additional documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Id.* (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

### B. Averett Properly Alleges Harm.

Aungst alleges throughout his Rule 12(b)(6) motions to dismiss that he authorized nearly $20 million in withdrawals from the endowment as "necessary emergency measures to maintain operations" and thus there is no harm to Averett. (Mot. at 26; *see also* Mot. at 18, 19.) As a threshold matter, Aungst's claim that Averett has not pled recoverable damages must fail, because he mischaracterizes Averett's burden at this stage. "If discovery produces no basis for any damages stemming from the breach, then defendants will have a valid argument on the merits, but at the motion to dismiss stage the general allegation that plaintiffs have suffered damage is sufficient for the claim to survive." *Job v. Simply Wireless, Inc.*, 160 F. Supp. 3d 891, 900 (E.D. Va. 2015).

Aungst also argues that Aungst's depletion of Averett's endowment did not actually harm the University. This displays a fundamental misunderstanding of the purpose of an endowment and the laws regulating expenditure of endowment funds. The Complaint thoroughly and repeatedly alleges Averett was harmed by Aungst's unauthorized spending and withdrawals. (Compl. ¶¶105-107, 111, 140, 145, 165, 171.) Averett credibly alleges it was harmed by the loss of 75% of its

8

Endowment value, which was compounded by the lost investment returns had the Endowment been left intact. (Compl. ¶¶106-107.) Aungst spent the money that was supposed to be preserved in perpetuity for Averett's benefit.

The Complaint further alleges that, had the "Board been given true and accurate information, it would have been able to intervene and prevent the unauthorized expenditures from the Endowment." (Compl. ¶165.) It's particularly galling that Aungst claims that his "actions, while depleting endowment assets, prevented a more catastrophic outcome –the potential closure of the institution." (Mot. at 26.) As set out more fully in Averett's response to the GSIS Defendants' motion to compel arbitration, (ECF No. 18), it's exactly Aungst's actions that have brought the University to the brink of insolvency.

### C. The Complaint Alleges Aungst Breached his Fiduciary Duties (Count I)

Aungst argues that Count I, alleging breach of fiduciary duty, should be dismissed at this early stage because his conduct was a valid exercise of his business judgment. Aungst does not dispute that he owed a duty of loyalty and care to Averett. (Mot. at 17.) Instead, he tries to insert factual disputes regarding Aungst's intent that are not ripe at this stage. To the extent that Aungst contends that he reasonably relied on GSIS, or properly exercised his business judgment, "such disputes reflect the existence of factual issues that may not be resolved in a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *In re LandAmerica Fin. Grp., Inc.,* 470 B.R. 759, 792 (Bankr. E. D.Va.2 012).) *See also Keil v. Seth Corp.*, No. 3:21CV153 (DJN), 2021 WL 5088242, at *9 (E.D. Va. Nov. 2, 2021) (noting a split in authority as to whether the business judgment rule serves as a rebuttable presumption or an affirmative defense). The fact that Aungst cites an affirmative defense reveals that he seeks a premature ruling on the merits.

Regardless, the Complaint lays out facts that are more than sufficient to overcome the business judgment rule, spelling out in detail Aungst's breaches of his duties of loyalty and care to

9

Averett. Aungst misspent the endowment corpus (i) without authority from the Board (Compl. ¶ 81), (ii) in violation of the Investment Policy Statement (ECF 1-6); (iii) contrary to Virginia law governing the expenditure of endowments (Virginia Code 64.2-1100, et seq.) and (iv) in breach of Aungst's own promises to the Board. *See,* ECF 1-8 (email from Aungst to the Investment Subcommittee averring that "I assured Chairmen Keck and President Franks that Sandy and I would not tap the line of credit without first presenting a cashflow projection and specifically asking the Sustainable Foundation Committee of the Board for authorization to use the LOC.") Aungst also covered up his expenditures to the Board, repeatedly misrepresenting and concealing his actions. (Compl. ¶¶85-96, 100-101.) When his gross dereliction of duties came to light, he immediately resigned and accepted responsibility for the depletion of Averett's Endowment. (Compl. ¶ 104; ECF 1-11.) Those are certainly not the actions of someone who "made a good faith decision to use the Endowment for its intended purpose." (Mot. at 19.) Instead, the facts alleged demonstrate that Aungst acted well outside his authority and concealed his excessive spending from the Board. Those allegations are utterly incompatible with the exercise of good faith business judgment. Averett has met its pleading standard of breach of fiduciary duties of care and loyalty.

Aungst relies on *DCG&T*, but the court in that case expressly rejected the defendants' attempt to shield themselves from liability under the business judgment rule, finding that their "arguments ignore the limitations of a 12(b)(6) motion." *DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d at 588. "In the amended complaint, [Plaintiff] has pled that [defendants] acted in either selfish bad-faith for their own enrichment *or careless disregard for the best interests of the shareholders* (or both)." *Id.* (emphasis added). Similarly, here, Averett has pled sufficient facts to allege that Aungst disregarded his duties to the Board and to the University by, for example, knowingly borrowing under the margin loan and directly from the endowment without Board

10

approval or consent, and by concealing the extent of unauthorized borrowing from the Endowment to the Board. (Compl. ¶110.)[1]

Aungst's argument that the Complaint must allege that Aungst "personally benefited from any of the challenged actions" and acted with a "selfish or personal reason" or "for his own benefit" also fails. "In Virginia, to demonstrate a breach of a fiduciary duty, the plaintiff must show: (1) a fiduciary duty; (2) breach; and (3) damages resulting from the breach." *Adnet, Inc. v. Soni*, 66 F.4th 510, 515 (4th Cir. 2023). Breach of fiduciary duty merely requires the plaintiff to show that it was harmed by the breach, not that the defendant obtained an unlawful benefit. Averett has not accused Aungst of embezzling funds for his own enrichment, but that does not absolve him of responsibility for his breaches of fundamental duties to protect Averett's interests. The Complaint alleges, in detail, that Aungst owed fiduciary duties of loyalty and care to Averett, and breached those duties by, for example, knowingly borrowing under the margin loan and directly from the endowment without Board approval or consent, and by concealing the extent of unauthorized borrowing from the Endowment to the Board. (Compl. ¶110.) Again, the only authority Aungst does cite actually works against him. He again cites to *DCG & T ex rel. Battaglia/Ira v. Knight*, which found that allegations that reliance on "stale" reports "raise[d] a plausible inference that the Directors did not

---

[1] Averett alleges in Count I, that Aungst breached his fiduciary duties by:

> colluding with GSIS by colluding with GSIS to ensure that the Board engaged GSIS as Averett's OCIO through a non-competitive RFP process; by arranging for Averett to participate in a margin loan program that exposed the Endowment to inordinate risk; by failing to properly explain those risks to the Board; by exposing restricted assets in the Endowment to risk despite representing to the Board that only quasi-endowment assets would be used to collateralize the margin loan; by knowingly borrowing under the margin loan and directly from the endowment without Board approval or consent; and by concealing the extent of the unauthorized borrowing from the Endowment to the Board.

(Compl. ¶110.)

11

act in good faith." 68 F. Supp. 3d at 588. There's no requirement, particularly at the Rule 12(b)(6) stage, to allege that Aungst engaged in "kickbacks" or "self-dealing". (Mot. at 20.)

Having met the pleading standard for breach of fiduciary duty, whether the business judgment rule can provide any relief to Aungst is an issue for discovery, and is not appropriate at the motion to dismiss stage. *See, e.g.*, *WLR Foods, Inc. v. Tyson Foods, Inc.*, 155 F.R.D. 142, 145 (W.D. Va. 1994), *aff'd*, 65 F.3d 1172 (4th Cir. 1995) (discussing the parameters of discovery permitted by Virginia's business judgement rule, then codified at § 13.1–690). Aungst's claim in his motion that he made a "good faith decision to use the Endowment for its intended purpose" "to keep the lights on" is flatly contradicted by Aungst's own resignation email. (Mot. at 19.) In that email, Aungst claimed that he "did not realize the funds I was being wired were actually endowment corpus." (ECF 1-11.) What Aungst truly thought or believed remains to be litigated. But the fact that Aungst has already alleged a different theory in his motion to dismiss than his statement to the Board, incorporated into the Complaint, underscores that his allegations are not ripe for determination.

### D. The Complaint Properly Pleads Statutory Business Conspiracy (Count VI)

Aungst next argues that Averett fails to properly allege any of the elements of statutory business conspiracy. While he concedes that the Complaint sets forth multiple examples in which Aungst and GSIS worked together to make unauthorized withdrawals, he argues that the claim nevertheless fails because Averett did not "allege facts showing these parties agreed in advance to engage in a coordinated scheme to defraud the University." (Mot. at 23.) Aungst relies on *Schlegel v. Bank of Am., N.A.*, which sets forth that at the Rule 12(b)(6) stage, "a plaintiff 'must at least plead the requisite concert of action and unity of purpose,' and must do so 'in more than mere conclusory language.'" 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) (citing *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F.Supp.2d 483, 499 (E.D. Va. 2003)).

12

Averett easily clears the bar for pleading conspiracy under *Schlegel* and *Bay Tobacco*. Averett alleges in detail "facts that would allow the court to infer that [defendants] acted together." *Id*. The Complaint explains how Aungst surreptitiously helped GSIS win its role as Averett's investment advisor. (*See* Compl. ¶24-36, 143-45.) The Complaint recites in detail how Aungst and GSIS worked together to withdraw millions of dollars from Averett's endowment, and conceal the nature of those withdrawals from the Board of Trustees. The Complaint details how GSIS, Aungst, and the Individual GSIS maxed out the margin loan and withdrew funds from the endowment corpus, but then presented misleading reports to the Board that gave no mention of the margin loan or that Endowment assets had been "borrowed". (Compl. ¶¶85-92.) Each transaction involved communication between the Defendants, and each presentation required the other to be complicit in misleading the Board.

Aungst next argues the Complaint fails to allege legal malice, but this argument is not appropriate at the motion to dismiss stage. Aungst claims that the Complaint is consistent with Aungst "attempting to bolster the University during a time of downturn" and "to help save Averett from further injury, not inflict more." (Mot. at 26.) Anyone, let alone a CFO with 36 years of experience at three prior institutions of higher education (Mot. at 5), who was trying to help the University, would not have repeatedly borrowed and sold off endowment funds without notifying the Board. Moreover, if Aungst were acting in Averett's interest to stave off further injury, he would have sounded the alarm regarding the University's financial distress instead of concealed what he was doing from the Board in false and misleading presentations. Essentially, Aungst argues he was somehow just doing his job. If that was the case, it seems odd he would immediately offer to resign upon being found out. (ECF 1-11.) Regardless, the facts as alleged by Averett are sufficient to show that intent to injure Averett "was at least one of the purposes of the conspiracy." *Livia Props.,*

13

*LLC v. Jones Lang LaSalle Americas, Inc.*, No. CIV.A. 5:14-00053, 2015 WL 4711585, at *11 (W.D. Va. Aug. 7, 2015), *aff'd sub nom. Livia Props., II, LLC v. Jones Lang LaSalle Americas, Inc.*, 646 F. App'x 322 (4th Cir. 2016).

Finally, as discussed above, the Complaint thoroughly alleges that defendants' actions caused harm to the university's business and operations. *Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 622 (W.D. Va. 2023) (statutory business conspiracy requires an alleged injury to be to a business). Aungst's allegation that defendants' unauthorized withdrawals simply "provided essential cash flow to meet payroll obligations and keep the institution operational" (Mot. at 26), is flatly contradicted by the allegations in the Complaint, its supporting documentation, and Aungst's own admission in his resignation email. Regardless, this is an issue for discovery.

### E. Fraud (Count VIII)

Aungst argues that Count VIII, alleging fraud against all Defendants, is deficient under the pleading standard of Rule 9(b) because the "collective allegations faults [sic] to identify what specific statements, concealments, or non-reports are attributable to Aungst," including when and to whom they were made. (Mot. at 27.) "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The Complaint provides Aungst with detailed allegations as to the "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. (citations omitted). Averett details, at length, how Aungst collaborated with GSIS to withdraw Averett's funds, and then presented false

14

statements and reports to the Board. For example, the Complaint details—and attaches as exhibits—email correspondence showing that in March 2023, Aungst requested that GSIS borrow $600,000 on Averett's margin loan with Schwab. (ECF 1-9.) Curt Thompson informed Aungst via email, "We will have to sell endowment assets to make up the delta." *Id*. The email indicates that Aungst and Thompson then spoke on the phone, after which they confirmed they would obtain a special exemption to raise Averett's borrowing limit. *Id*.; Compl. ¶76. Yet, when the Endowment Subcommittee met less than two months later, the performance report that GSIS provided Averett suggested an *increase* in the endowment's value, and made no mention of the margin loan or that $600,000 had been pulled from the Endowment. (Compl. ¶87.) The Complaint alleges that "Aungst continuously led the Board to believe that Averett's financial condition was better than it actually was. Aungst did not inform the Board that he was illicitly using the Endowment to cover a significant operating deficit." (Compl. ¶100.) Aungst is on notice, and Rule 9(b) is satisfied.

### F. Averett Properly Pled Fraud and Constructive Fraud as Alternative Theories of Relief (Count IX)

Aungst argues, without legal support, that it's improper to plead actual fraud and constructive fraud in the alternative because they have different elements. (Mot. at 28.) Aungst does not allege that the Averett has failed to sufficiently plead the elements of constructive fraud. Instead he argues that the counts are improperly pled, "because the same conduct cannot be both intentional . . . and negligent . . . ." But of courts, courts routinely consider both actual and constructive fraud claims; whether the factfinder ultimately finds Aungst lacked the specific intent required for actual fraud is a matter for another day. *See, e.g., Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003) (analyzing trial court's order setting aside the verdict when actual and constructive fraud were pled separately); *Almubarak v. Liv Luxury Grp., LLC*, No. 1:19-CV-00358-LO, 2020 WL 13605975, at *2 (E.D. Va. Sept. 4, 2020) (trial court

15

properly considered both actual and constructive fraud when complaint only used the word "fraud"; court granted partial summary judgment on actual fraud claim but found the facts satisfied the requirements for constructive fraud) ; *Brown v. Partipilo*, No. 1:10CV110, 2011 WL 1562908, at *5 (N.D. W. Va. Apr. 22, 2011) ("[W]hile the better practice may be to plead actual fraud and constructive fraud alternatively in separate counts of a complaint, [Rule 9(b)] does not require it . . ."). Aungst's argument that Averett cannot "rely on substantially the same factual allegations" is completely unfounded, as Averett could have pled both allegations in the same count. *Id.* The Complaint sufficiently pleads facts to put Aungst on notice of both claims.

## CONCLUSION

The Court should deny Aungst's motions to dismiss because (i) Aungst is not a party to Averett's contract with GSIS and cannot enforce their arbitration agreement; and (2) Averett thoroughly pled sufficient facts to support each of the four claims alleged against Aungst.

**DATED:** July 28, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**WILLIAMS MULLEN**

　　　　　　　　　　　　　　　　　　　　By: /s/ *Harold E. Johnson*
　　　　　　　　　　　　　　　　　　　　Harold E. Johnson (VSB No. 65591)
　　　　　　　　　　　　　　　　　　　　Virginia M. Bruner (VSB No. 81913)
　　　　　　　　　　　　　　　　　　　　WILLIAMS MULLEN
　　　　　　　　　　　　　　　　　　　　200 S. 10th Street, Suite 1600
　　　　　　　　　　　　　　　　　　　　Richmond, VA 23219
　　　　　　　　　　　　　　　　　　　　T: (804) 420-6000
　　　　　　　　　　　　　　　　　　　　F: (804) 420-6507
　　　　　　　　　　　　　　　　　　　　hjonson@williamsmullen.com
　　　　　　　　　　　　　　　　　　　　vbruner@williamsmullen.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Averett University of Danville, Virginia*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 28th day of July, 2025, I served a copy of the foregoing pleading on all counsel of record via ECF.

                                                  /s/ *Harold E. Johnson*
                                                *Counsel for Averett University of*
                                                *Danville, Virginia*