UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Danville Division)

|  |  |  |
|---|---|---|
| AVERETT UNIVERSITY OF DANVILLE, VIRGINIA, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 4:25cv00019 |
| DONALD BRUCE AUNGST, *et al.* | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT AUNGST'S REPLY IN SUPPORT
OF HIS MOTION TO DISMISS FOR IMPROPER VENUE
AND FAILURE TO STATE A CLAIM**

Defendant, Donald Bruce Aungst ("Aungst"), by and through counsel, pursuant to Fed. R. Civ. Pro. 12(b)(3), the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*, and Fed. R. Civ. Pro. 12(b)(6), serve the following as Reply in further support of his Motion to Dismiss the Complaint filed by Plaintiff Averett University ("Averett" or "the University").

**TABLE OF CONTENTS**

*Table of Authorities* ................................................................................................................... *3*

*INTRODUCTION* ....................................................................................................................... *4*

*ARGUMENT* ................................................................................................................................ *5*

    **I.**   **Fourth Circuit Precedent Permits Nonsignatories to a Contract to Invoke Its Terms.** ............ 5

    **II.**   **The Facts Averett Relies Upon in its Complaint Fail to Meet the Legal Standard for its Claims.** ................................................................................................................................. 9

        a.   The Accepted Facts Do Not Support Breach of Fiduciary Duty. ................................ 10
        b.   The Accepted Facts Do Not Support Statutory Business Conspiracy ......................... 12
        c.   The Accepted Facts Do Not Support Either Fraud Claim ........................................... 13

*CONCLUSION* ......................................................................................................................... *14*

# TABLE OF AUTHORITIES

**SUPREME COURT**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................................................. 9
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .................................................................. 8
Henry Schein, Inc. v. Archer & White Sales, Inc., U.S. 63 (2019) ......................................... 6
Tiffany v. Boatman's Sav. Inst., 85 U.S. 375 (1873) ............................................................ 12
United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960) ...................... 6

**COURTS OF APPEAL**

Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505 (4th Cir. 2003) ................................ 8
Chao v. Rivendell Woods, Inc., 415 F.3d 342 (4th Cir. 2005) ............................................. 13

**DISTRICT COURTS**

Couch v. City of Virginia Beach, 768 F. Supp. 3d 741 (E.D. Va. 2025) .............................. 13
Green v. Zachry Indus., Inc., 36 F. Supp. 3d 669 (W.D. Va. 2014) ....................................... 6
Hutchinson v. Absolute Recovery Towing Am. Credit Acceptance, LLC, No.
   320CV00621RJCDCK, 2021 WL 3285037 (W.D.N.C. July 27, 2021) ............................. 5
Job v. Simply Wireless, Inc., 160 F. Supp. 3d 891 n. 10 (E.D. Va. 2015) .............................. 8
Lizarbe v. Rondon, 642 F. Supp. 2d 473 (D. Md. 2009) ........................................................ 8
Lokhova v. Halper, 441 F. Supp. 3d 238 (E.D. Va. 2020) ..................................................... 8
Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC, 250 F. Supp. 3d 13 (E.D. Va. 2017 ... 4, 5
United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp., LLC, 235 F. Supp. 3d 745
   (D. Md. 2016) .................................................................................................................... 13

**BANKRUPTCY COURTS**

Brenco Enters. v. Bitesquad.com LLC, 735 F. Supp. 3d 608 (E.D. Va. 2018) ...................... 7
In re Oaktree Med. Ctr., P.C., 640 B.R 649 (Bankr. D.S.C. 2022) ........................................ 6

**STATE COURTS**

Meuse v. Henry, 296 Va. 164 (2018) ................................................................................... 12

## **INTRODUCTION**

Averett's opposition filing makes clear it misunderstood several points Aungst makes in his Motion to Dismiss. First, Averett mischaracterizes Aungst's arbitration argument by claiming that he posited that Aungst was a "party" to the IAC in his individual capacity. *See* ECF 26, § I(A). He has never made such an assertion. Rather, Aungst argues that he signed the IAC as Averett's authorized agent and representative, making him a signatory acting on behalf of Averett itself— one of the two actual parties to the agreement. While Averett correctly notes that the arbitration provision governs disputes "between GSIS and Averett," it fundamentally misunderstands the nature of the claims it has chosen to bring. Although the contract does not explicitly contemplate arbitrating claims against Averett's own employees, the duties and obligations that form the very foundation of Averett's claims against Aungst arise directly under the IAC and its accompanying Investment Policy Statement. Averett's attempt to misclassify Aungst's arguments to compel arbitration as one borne out of the employer-employee relationship misses the mark. Averett cannot simultaneously invoke the IAC as the source of Aungst's purported duties while denying him access to the dispute resolution mechanism contained within that same agreement. Having chosen to pursue claims that are inextricably intertwined with the IAC's framework, Averett must accept the arbitration provision that governs disputes arising under that agreement.

Further, despite its argument to the contrary, Averett's opposition confirms that this case presents a purely legal question appropriate for resolution under Rule 12(b)(6): whether Averett's own factual allegations, accepted as true, satisfy the essential elements required for each claim. Aungst does not dispute the underlying facts as alleged—that he made endowment withdrawals during Averett's acknowledged financial crisis while working with professional investment advisors and providing reports to the Board. The dispositive issue is whether these accepted facts

4

establish fraud, breach of fiduciary duty, and conspiracy, or instead describe crisis management by an institutional fiduciary acting within delegated authority. Averett's detailed opposition inadvertently demonstrates why their own allegations fail to meet the legal standards for their claims: the facts they plead show good faith institutional management with professional oversight and Board ratification, not the bad faith conduct, fraudulent intent, or malicious conspiracy required by law. This Court should resolve these pure questions of legal sufficiency in Aungst's favor without the need for factual development, as Averett's own pleadings establish that their accepted facts fall short of the legal thresholds necessary to state viable claims for relief.

## ARGUMENT

I.   Fourth Circuit Precedent Permits Nonsignatories to a Contract to Invoke Its Terms.

Under Fourth Circuit precedent, Aungst, as a nonsignatory, is permitted to invoke the arbitration provision between Averett and GSIS, two signatories, for claims brought by one of the signatories arising under the IAC. Averett correctly describes the outcome of Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC, 250 F. Supp. 3d 13, 26 (E.D. Va. 2017), as it applies *to other non-signatories*. That, however, is another misreading of Aungst's argument.

In that case, a defendant attempted to compel arbitration of claims against him that came from both signatories and a nonsignatory of a contract containing an arbitration provision for conduct in connection with his duties under that contract. The Meridian Court held that arbitration could only be enforced as to a nonsignatory (in this case, the whole owner of the plaintiff company) under a theory of agency, or under four distinct ways, none of which applied in that case. Id. at 25-26. The Meridian Court *did permit* the defendant to compel arbitration *as to the signatory*, stating "arbitration is a matter of contract—and it is undisputed that traditional contract law permits

5

nonsignatories to enforce or be bound by contract terms." Id. at 25. The Meridian court continued that the plaintiff's interpretation—that Averett now asks this Court to adopt—would:

> "lead to the anomalous result that the Supreme Court, in upholding an arbitration clause, simultaneously (1) overturned by negative implication longstanding federal and state precedents permitting nonsignatories to compel (or be subjected to) arbitration clauses, and (2) thereby paved a path for adroit plaintiffs to "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in their complaints" and thus "nullify . . . the effect of the rule requiring arbitration."

Id. (internal citations omitted). In short, a nonsignatory may still compel arbitration against a signatory who makes claims that arise under the duties created by the contract. In the instant case, Aungst invokes the arbitration claim against Averett, a signatory. What's more, Averett's claims against Aungst stem from actions it alleges he took while an agent of Averett, a point that Averett concedes in its Opposition. ECF 26, 3. This agency theory is further supported by Hutchinson v. Absolute Recovery Towing Am. Credit Acceptance, LLC, No. 320CV00621RJCDCK, 2021 WL 3285037 (W.D.N.C. July 27, 2021).[1]

Averett also seems to claim that the duties created by the IAC and then entrusted to Aungst – through a continuing chain of delegation – somehow existed *prior to the IAC*. While Aungst's position as CFO created some fiduciary duties, the duties on which Averett's claims rely were not delegated until the IAC came into existence. A reading of the IAC confirms this. The Investment Policy Statement ("IPS", an IAC exhibit), states "[t]he ultimate responsibility for managing The Fund shall rest with The Board, which may delegate responsibility to the [Investment] Committee." ECF 1-6, 1. The Investment Committee, in turn, delegated to Aungst as CFO the

---

[1] Averett expends resources to point out that Hutchinson is an unreported opinion but does rebut the argument that agents acting on behalf of a principal can enforce an arbitration agreement, nor analyze J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988), a 4th Circuit Court of Appeals case on which Hutchinson relied.

same responsibilities that make up Averett's complaint, including, but not limited to, "preparation of financial reports for the Committee/the Board," and "Cash and Short-Term Liquidity Management. Id. at 2. The IPS similarly delegates to Aungst "the discretion to cease withdrawals," implying the negative discretion to *continue* withdrawals. Id. at 3. While Aungst did owe fiduciary duties to Averett prior to the IAC, the conduct Averett now complains of is inextricably linked to the duties it delegated to him under the IAC.

Averett states in its opposition that "Aungst is not a party to Averett's contract with GSIS," curiously dedicating resources to rebut an argument that Aungst has not raised. It then incorporates by reference its opposition to GSIS' Motion to Compel Arbitration, attempts to recast its complaint as one brought independent of the IAC, and then directly contradicts this jurisdiction's precedent, stating unequivocally that "Aungst cannot invoke an arbitration provision in a contract to which he is not a party." ECR 26, 5. As might be expected, Aungst's reply is to this attempt is also similar to GSIS' reply at ECF 19, § 3.

Averett is correct that courts will not require parties to arbitrate claims which they did not agree to arbitrate, and that the agreement must be clear and unmistakable. *See generally*, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); Henry Schein, Inc. v. Archer & White Sales, Inc., U.S. 63 (2019). Averett's contention that the agreement was not clear and unmistakable cannot withstand scrutiny when held to binding precedent, as the 4th Circuit has held that any ambiguity remaining in a provision that invokes rules of a particular arbitrator must be resolved in favor of arbitration. *See* Green v. Zachry Indus., Inc., 36 F. Supp. 3d 669, 678 (W.D. Va. 2014); Eubank v. Camping World RV Sales, LLC, 764 F.Supp.3d 321 (E.D. Va. 2025); In re Oaktree Med. Ctr., P.C., 640 B.R 649, 660 (Bankr. D.S.C. 2022); *see also* ECF 19, § III (where the GSIS Defendants cite no less than ten cases standing for the same proposition).

7

Averett is unable to point to a single authority that obviates the need to apply binding precedent favoring arbitration because the arbitration provision is "poorly drafted." Should it have desired a redrafting of the arbitration provision, it could have requested one at any point during the Board and/or Committee meeting discussing the IAC, or before its three signatories – the majority of which are not party to this suit – executed it. Averett's argument that because the IAC did not contain the AAA's "model arbitration clause," it should be permitted to ignore the arbitration provision entirely is belied by the fact that the provision specifically states that *any* dispute that came from the agreement – or the involving a Platform Provider or Investment Manager – "shall be determined by an arbitration proceeding, which shall be held in accordance with the rules, regulations and procedures then in effect of the American Arbitration Association." ECF 1-5, § XIV. Put differently, despite not invoking the "magic words" that Averett cites, it is clear from the provision that the parties intended the AAA rules to govern any dispute, including the issues of arbitrability. *See*, Brenco Enters. v. Bitesquad.com LLC, 735 F. Supp. 3d 608 (E.D. Va. 2018) (invocation of the rules with nothing more delegates the arbitrability issue). Averett's argument that because the agreement did not include a "magic" clause, the question of arbitrability should fall to the Court seeks to turn this Circuit's precedent resolving ambiguity on arbitrability on its head.

Finally, it should not go unnoticed that Averett tacitly concedes the AAA has jurisdiction over its claims when it argues that the Aungst claims essentially "go along" with the GSIS claims, as a way to reduce the "financial hardship" Averett will face in litigating *its own claims*. Any other reading would imply Averett contends the Court has the power to disclaim jurisdiction of claims, in order to grant another tribunal jurisdiction over claims it ordinarily would not have, solely for the convenience of a party. The AAA either has jurisdiction, or it does not; the Court either has

jurisdiction, or it does not. This holds true regardless of the financial hardship Averett will face in prosecuting its own claims. Any decision to the contrary would undermine the public's confidence in the independence of the judiciary. For these reason, Averett's opposition to compel arbitration must fail.

II. The Facts Averett Relies Upon in its Complaint Fail to Meet the Legal Standard for its Claims.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. Averett cites Yukon Pocahontas Coal Co. v. Island Creek Coal Co., 428 F. Supp.2d 490, 494 (W.D. Va. 2006), for the contention that a complaint cannot be dismissed "unless the plaintiff can prove no set of facts that would entitle the plaintiff to relief." This does not permit the Court to consider *every conceivable* set of facts that *could support* Averett's claims. Instead, the facts must be sufficiently pled in the complaint. *See generally* Lokhova v. Halper, 441 F. Supp. 3d 238, 245 (E.D. Va. 2020) (holding that facts alleged in the Complaint must be taken as true; Lizarbe v. Rondon, 642 F. Supp. 2d 473, 481 (D. Md. 2009) (same); Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 509 (4th Cir. 2003) (same).

Averett cites Job v. Simply Wireless, Inc., 160 F. Supp. 3d 891 n. 10 (E.D. Va. 2015), for the contention that "the general allegation that plaintiffs have suffered damage is sufficient for the claim to survive.". The quoted material does not appear in the holding of the case, but rather in a footnote. That footnote relies on Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Further analysis of Twombly shows Averett's reliance on Job misses the substance entirely. To survive a motion to "dismiss under Rule 12(b)(6), the complaint must set forth enough facts for the claim to be "plausible on its face." Id. at 555. That is, the allegations must be "enough to raise a right of relief above the speculative level." Id. Although a pleading need not include "detailed factual

9

allegations," id., it must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." See Ashcroft v. Iqbal, 556 U.S. 662 (2009). Allegations that are no more than mere conclusions "are not entitled to the assumption of truth." Id. at 679. Thus, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient. Id. at 678. The Court must draw on "judicial experience and common sense". Id. at 681. This requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." Id. at 678.

For purposes of the Motion to Dismiss, even when taking the underlying factual allegations as true, Averett's Complaint does not sufficiently allege facts that that support the claims made against Aungst beyond naked assertions that are unsupported by common sense. Therefore, resolution of this motion turns on legal interpretation of undisputed conduct, not factual development requiring discovery.

    a.   The Accepted Facts Do Not Support Breach of Fiduciary Duty.

Despite Averett's argument to the contrary, Aungst's actions staved off the very damage it now claims Aungst caused. Averett states in its Opposition to Aungst's Motion that he "spent the money that was supposed to be preserved in perpetuity for Averett's benefit." ECF 26, 9. It makes no explanation at all of what specific benefit the Endowment was designed to support, much less one that should take priority over ensuring Averett remained operational; to be clear, Aungst did not allocate the funds to anything other than necessary University expenditures. In its Opposition to GSIS Defendant's Motion to Compel, Averett states that it has taken steps to ensure operations, including furloughs, salary reductions, elimination of positions, reduction of academic and athletic programs, and renegotiations on debt it owes to various vendors. ECF 18, 4.

Common sense would indicate Averett wished it had those endowment funds now to avoid taking its austerity measures but fails to recognize that it was Aungst's use of those funds that prevented the need for those same austerity measures previously. In its reply, GSIS makes explicit what Averett signals, but does not readily admit: Averett would rather use the money it has for a reason *other* than what it is now required to do. *See generally*, ECF 19, § II(B). It argues that, but for Aungst and GSIS's actions, it would have had access to the endowment and not had to take austerity measures. However, it necessarily follows that Aungst's actions delayed the need for Averett to take these steps before now. In other words, Aungst's actions were not an interceding cause of Averett's financial woes.

Averett's Opposition does nothing to rebut Aungst's assertion that the Board *was* given "true and accurate information" when it was "provided reports that included contribution and distribution figures on at least three occasions" as shown in paragraphs 87, 89 and 91 of the Complaint. Instead, it tastelessly seeks to inflame the situation by describing Aungst's defense of making good-faith decisions to support the University as "galling." The Court should decline to see Aungst's actions for anything more or less than what they were; the attempt to stave off austerity measures brought about by the University's fundraising and enrollment deficiencies.

Averett attempts to misconstrue differences in legal argument as "inserting factual disputes." This is untrue. As evidenced by Averett's Complaint and exhibits, it delegated certain duties to Aungst. The IAC – through the IPS – delegated "routine portfolio management activities, including the discretion to cease or continue withdrawals. Aungst's actions were routinely presented to the Board, vitiating Averett's claim of concealment.[2] Citing binding authority in the

---

[2] Despite Averett's reference of "stale reports" in <u>DCG & T ex rel. Battaglia/Ira v. Knight</u> case is directly contradicted by the report "snippets" in ¶¶ 87, 89, and 91 of the complaint, clearly showing dynamic changes from report to report.

11

4th Circuit is not "applying an affirmative defense" but rather providing support for the contention that Averett's complaint is legally deficient based on the facts it presented. At risk of overstating this fact, as discussed *supra*, Aungst drawing on the Endowment was not "careless disregard" for Averett's well-being, but was done in furtherance of it.

Instead, Averett's opposition brief represents an impermissible attempt to expand their legal theories beyond what was actually pleaded in their complaint. While Averett now argues that Aungst violated "Virginia law governing the expenditure of endowments (Virginia Code 64.2-1100, *et seq*.)", a review of their original complaint reveals no mention whatsoever of Virginia's Uniform Prudent Management of Institutional Funds Act (UPMIFA) or any specific statutory violations under Virginia Code 64.2-1100 *et seq*. as it relates to Aungst.[3] The complaint's breach of fiduciary duty claim against Aungst is grounded entirely in common law fiduciary duties arising from his position as CFO, with no reference to statutory obligations under UPMIFA. This represents a fundamental shift in Averett's legal theory that cannot be accomplished through an opposition brief. For these reasons, it's claim of breach of fiduciary duty must fail.

b. The Accepted Facts Do Not Support Statutory Business Conspiracy

Averett states that Aungst "concedes the Complaint sets forth multiple examples in which Aungst and GSIS worked together to make unauthorized withdrawals." ECF 26, 12. That statement is inaccurate and misleading. Aungst and GSIS undertook actions designated to them by the IAC to support Averett. If it is now Averett's contention that the acts delegated to Aungst and GSIS in the IAC amount to statutory business conspiracy, its entire Complaint must be dismissed on the

---

[3] Averett's mention of the UPMIFA instead comes in an exhibit and Count V, a count against GSIS. Averett also includes a general "*et seq*." citation but is completely devoid of any subsection or statutory language sufficient to put Aungst on notice of any potential claims as to himself.

12

basis that contracts which require illegal activity are unenforceable, and Averett's claims must be dismissed in their entirety, as the claims arise under duties designated to Aungst under the IAC. *See* Tiffany v. Boatman's Sav. Inst., 85 U.S. 375 (1873) (a contract to do an act forbidden by law is void and cannot be enforced); Meuse v. Henry, 296 Va. 164 (2018) (an agreement to commit a crime is void ab initio). The facts alleged in the Complaint does not sufficiently allege concerted activity to harm Averett. It continues to rely on the argument that the Defendants "concealed" their "wrongdoing" by presenting "misleading reports," the very same reports that clearly show decreases based on the withdrawals. As discussed at length, Averett's claim of harm cannot withstand a commonsense review of the Averett's insolvency issues, particularly when—as Aungst contends and Averett concedes—Aungst engaged in no self-dealing and derived no personal benefit from performing his duties.

  c. <u>The Accepted Facts Do Not Support Either Fraud Claim</u>

  Averett incorrectly states that the Complaint provides sufficient notice of detailed allegations against him. It seeks to minimize the number of alleged bad actors, stating that Aungst "collaborated with GSIS to withdraw Averett's funds, and then presented false statements and reports to the Board." ECF 26, 14-15. The Complaint treats GSIS as one entity, even though Averett brought claims against GSIS the legal entity and *five other individuals*. To argue that the Complaint sufficiently delineates which of the *six* individuals were responsible for each of the acts it seeks to claim were fraudulent is nonsensical. Instead, the claim for fraud states, "Defendants knowingly and intentionally made false statements to the Board . . .," "Defendants presented reports to the Board . . .," and "Defendants concealed the trust value of the Endowment . . . ." Averett's argument that the Defendants are sufficiently on notice of claims against them directly

contradict this Circuit's precedent that alleged wrongdoers cannot be grouped together on a single set of allegations.

Finally, Averett again misinterprets Aungst argument, this time with regard to alternative pleadings. Averett may plead "as many theories as the facts will fit." United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp., LLC, 235 F. Supp. 3d 745, 755 (D. Md. 2016). "However, if a plaintiff chooses to plead in the alternative, he still must allege facts sufficient to show that his alternative theory is plausible." Couch v. City of Virginia Beach, 768 F. Supp. 3d 741, 754 (E.D. Va. 2025). In the count for Constructive Fraud, Averett "re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein." ECF 1, ¶ 166. In other words, Averett attempts to incorporate its "The Facts" section to Count IX. At all times, Averett alleged that Aungst acting "knowingly, "colluded," or otherwise acted "intentionally." Although it could have, it did *not* allege that Aungst acted "negligently". Claims that rely on separate elements must contain factual allegations to support those claims. *Cf.* Chao v. Rivendell Woods, Inc., 415 F.3d 342 (4th Cir. 2005). Averett failed to do so, and for these reasons, its claims for fraud must be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should grant Aungst's Motion to Dismiss and compel arbitration of all claims against him. The record establishes that Averett's claims arise directly from duties and obligations created under the IAC, making arbitration the contractually mandated forum for resolution. As an agent of a signatory to the IAC, and as the party against whom claims inextricably intertwined with that agreement are asserted, Aungst is entitled to invoke the arbitration provision that Averett cannot simultaneously embrace and disavow.

The arbitration provision's broad "arising under" language, combined with the strong

14

federal policy favoring arbitration and the parties' clear delegation of arbitrability questions to the arbitrator through incorporation of AAA rules, requires that these disputes be resolved in the agreed-upon arbitral forum. This approach will provide more efficient resolution and honor the parties' express contractual commitment, while avoiding the risk of inconsistent rulings in parallel proceedings.

Alternatively, should this Court decline to compel arbitration, it must nonetheless dismiss all claims against Aungst under Rule 12(b)(6). This case presents the precise type of legal question appropriate for a motion to dismiss resolution: whether Averett's own factual allegations, accepted as true, satisfy the essential elements required for each claim. They do not.

Averett's detailed factual allegations demonstrate good faith institutional crisis management by a CFO acting within delegated authority, in consultation with professional advisors, and with Board ratification through continued acceptance of reports showing endowment activity. These accepted facts describe emergency measures to preserve university operations during acknowledged "perilous financial condition," not the bad faith conduct, fraudulent intent, or malicious conspiracy required by law.

Averett's attempt to expand its legal theories against Aungst through its opposition brief—particularly by invoking UPMIFA statutory violations never pleaded in the original complaint—confirms the legal insufficiency of its original pleadings and cannot cure fundamental defects in its claims. The conspiracy count fails for lack of any factual allegations supporting an advance agreement to harm Averett. The fraud counts suffer from incurable group pleading defects and internal inconsistency between intentional and constructive fraud theories. The breach of fiduciary duty claim flounders on Averett's inability to allege bad faith, self-dealing, or conduct outside delegated authority.

Most fundamentally, Averett's opposition confirms that the university obtained precisely what Aungst's actions were intended to provide: continued operations during financial crisis. Averett now implements the same "austerity measures" that Aungst's endowment management decisions successfully delayed. The University cannot credibly claim harm from actions that postponed the very cost-cutting measures it now complains about adopting.

WHEREFORE this Court should either: (1) grant Aungst's motion to dismiss for improper venue and compel all parties to proceed to arbitration in accordance with the IAC's arbitration provision; or (2) grant Aungst's motion to dismiss for failure to state a claim upon which relief can be granted and dismiss all claims against him with prejudice. Both forms of relief are warranted by the law, the facts as pleaded, and the parties' own contractual agreements.

Dated: August 4, 2025

Respectfully submitted,

THE MUNDACA LAW FIRM, LLC

By: /s/ *Francisco E. Mundaca*
Francisco E. Mundaca
VSB No. :96073
THE MUNDACA LAW FIRM, LLC
1997 Annapolis Exchange Pkwy
Suite 300
Annapolis, Maryland 21401
Phone: (202) 474-8500
Fax: (240) 233-8626
Email: fmundaca@mundacalaw.com

and

By: /s/ *Zachary S. Aman*
Zachary S. Aman
Admitted *Pro Hac Vice*
THE MUNDACA LAW FIRM, LLC
1997 Annapolis Exchange Pkwy
Suite 300
Annapolis, Maryland 21401

        Phone: (202) 474-8500
        Fax: (240) 233-8626
        Email: zaman@mundacalaw.com

*Counsel for Defendant*
*Donald Bruce Aungst*